**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ROBERTO MORALES DIAS, | No. EDCV 05-181 CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I. BACKGROUND

Plaintiff Roberto Morales Dias was born on February 5, 1958, and was 45 years old at the time of his administrative hearing. [Administrative Record, "AR," 32, 70.] He has a fourth grade education in Mexico [AR 36] and past relevant work experience as a

tool/parts clerk. [AR 48.]  Plaintiff alleges disability on the basis of back pain, depression, and a left foot injury. [AR 82.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on March 2, 2005, and filed on March 11, 2005.  On September 9, 2005, defendant filed an answer to the complaint and plaintiff's Administrative Record ("AR").  On November 21, 2005, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") on May 7, 2002, alleging disability since January 27, 2001. [AR 70.]  An administrative hearing was held on December 17, 2003, before Administrative Law Judge ("ALJ") Robert K. Rogers, Jr.  [Transcript, 32.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff (through a translator) and vocational expert Joseph Mooney. [AR 33.]  The ALJ denied benefits in a decision dated July 27, 2004. [Decision, AR 20.]  When the Appeals Council denied review on January 27, 2005, the ALJ's decision became the Commissioner's final decision. [AR 6.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject

the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V.   DISCUSSION

**A.   THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler,

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date (step one). [AR 14.] The ALJ then determined that the medical evidence failed to establish that plaintiff had an impairment or combination of impairments that would be considered "severe" (step two). [AR 19.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

**C. ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies three disputed issues:

1. Whether the ALJ properly considered the examining psychiatrist's assessment;

2. Whether the ALJ properly considered the findings of the state agency review physician; and

3. Whether the ALJ properly considered lay evidence offered by plaintiff's daughter.

[JS 3.]

**D. ISSUE ONE: THE EXAMINING PSYCHIATRIST'S OPINION**

In January 2001, plaintiff fractured his left foot in several places when a large gate fell on the foot at his workplace. [AR 38.] According to plaintiff, the effects of the accident included persistent pain in his foot and back [AR 38], as well as depression over his resulting financial difficulties. [AR 42.] The record contains no evidence that plaintiff received psychiatric treatment for his depression, but he was treated by Dr. Angela Ritz for his

---

765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

diabetes, back pain and leg problems. [AR 275-85.]  Dr. Ritz noted that plaintiff complained of depression, manifested by frequent crying, decreased appetite, and sleeping problems over his financial stress. [AR 284.]  Plaintiff was prescribed Prozac. [AR 285.] However, Dr. Ritz completed a "Work Capacity Evaluation (Mental)" in which she assessed plaintiff with no functional limitations whatsoever based on his mental and emotional capabilities. [AR 306-07.]  Based in large part on this assessment, the ALJ found that plaintiff's alleged depression was "non-severe" at step two of the sequential evaluation. [AR 18.][2]

Plaintiff argues that this step-two finding was erroneous because an examining psychiatrist, Dr. Divy Kikani, assessed plaintiff with several "moderate" limitations in work capacity due to his mental impairments.[3] [JS 3.]  The ALJ did not extensively discuss Dr. Kikani's opinion, other than commenting that, "While a psychological

---

[2] Although Dr. Ritz opined that plaintiff had no limitations in 16 areas of mental and emotional functioning, she inexplicably concluded the assessment by affirming that plaintiff's impairment "can be expected to last at least 12 months" and that the impairments would cause plaintiff to miss at least 3 days of work per month. [AR 307.] However, there is no evidence anywhere else in the record to support a finding of disability based on plaintiff's mental impairments alone. It is possible that Dr. Ritz considered plaintiff's inability to attend work based on his physical impairments in combination with his depression, as indicated by a subsequent assessment. [AR 308-09.]  If so, the ALJ offered substantial evidence to find plaintiff's physical impairments "not severe," and plaintiff does not challenge this finding upon appeal.

[3] Dr. Kikani opined that plaintiff had a moderate impairment in activities of daily living and social functioning; a moderate impairment in concentration, persistence and pace; a mild to moderate impairment in his ability to remember, understand and carry out simple instructions; a moderate impairment in his ability to remember, understand and carry out complex instructions, a moderate impairment in his ability to interact normally with co-workers, supervisors and the public; and a moderate impairment in his ability to persist at a normal work situation under customary pressure. [AR 212.]

examiner concluded...that the claimant presented with signs of a mood disorder secondary to medical condition, the records following that examination do not document any continual symptoms of depression or anxiety." [AR 18.] The ALJ then decided that Dr. Ritz's functional assessment "was accepted over the findings of the state agency physicians and examiner." [Id.] Plaintiff contends that Dr. Kikani's opinion was improperly "ignored without explanation" and that the ALJ's decision violates the Ninth Circuit requirement that an examining opinion not be rejected until "specific and legitimate reasons supported by substantial evidence in the record" are provided to reject it. [JS 4, citing Lester, 81 F.3d at 830-31.] Plaintiff's argument lacks merit.

The Ninth Circuit distinguishes among the opinions of three types of physicians: those who treat the claimant (treating physician), those who examine but do not treat the claimant (examining physician), and those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. Neither a treating nor examining medical opinion, if controverted, can be rejected unless the ALJ provides "specific and legitimate reasons supported by substantial evidence in the record." Id. at 830-31.[4] However, the opinion of the treating physician is accorded the most deference because "he is employed to cure and has a greater opportunity to know and observe the

---

[4] Although Lester acknowledged that the same legal standard applies in determining whether the Commissioner properly rejected the opinion of examining and treating doctors – neither may be rejected without "specific and legitimate" reasons supported by substantial evidence in the record – the court also suggested that the standard is lowered if the opinion is provided by an examining doctor. Lester, 81 F.3d at 831, fn. 8 ("[M]edical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion.").

patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). Accordingly, the opinion of a treating physician "is usually entitled to greater weight than a physician who has only examined the patient for SSA purposes." Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003).

In this case, the ALJ rejected the opinion of the examining physician, Dr. Kikani, in favor of the opinion of Dr. Ritz, the treating physician. Dr. Ritz's opinion surely comprises a "specific and legitimate reason" to discount Dr. Kikani's opinion, given that Dr. Ritz's opinion is entitled to more weight as a matter of law. In the Ninth Circuit, the opinions of examining physicians have been properly rejected for much less. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601, (9th Cir. 1999)(examining physician's opinion was properly rejected for being "inconclusive"); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)(examining psychologist's opinion of disability was properly rejected in favor of opinion of nurse practitioner who worked on "interdisciplinary team" with treating physician).

In addition, the ALJ did not merely make a bald assertion that he preferred the opinion of Dr. Ritz, but provided multiple reasons for the preference. Plaintiff appears to argue that the ALJ failed to provide specific reasons to discount Dr. Kikani's opinion because the ALJ did not recite the magic words, "I reject the opinion of Dr. Kikani for the following reasons..." Such an incantation is not required where, as here, the court can draw "specific and legitimate inferences" from the ALJ's opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ summarized the facts and conflicting clinical evidence in detailed and thorough fashion,

stating his interpretation and making findings. Id.  In particular, the ALJ noted that plaintiff received only sporadic treatment for the symptoms of depression and that there was no mention of any signs of depression or anxiety until July 2003, when plaintiff was started on Prozac. [AR 18.]  In September 2003, plaintiff attended one counseling session, after which Dr. Ritz assessed him with no functional limitations arising from his depression. [AR 18, 274, 306-07.]  The ALJ also noted that the records following Dr. Kikani's examination indicated no continual symptoms of depression and anxiety. [AR 18.] Taken as a whole, these reasons were sufficiently specific and legitimate to give "significant weight" to Dr. Ritz's benign functional assessment. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(allegation of depression was not credible when claimant was not being psychiatrically treated and taking psychotropic medications sporadically).  Accordingly, the ALJ's evaluation of the treating and examining medical opinions was supported by substantial evidence.

**E.   ISSUE TWO: THE STATE AGENCY REVIEW PHYSICIAN'S OPINION**

Following Dr. Kikani's assessment, a state agency review physician, Dr. Alan Schrift, completed a Psychiatric Review Technique form [AR 222-35] and a Mental Residual Functional Capacity Assessment [AR 236-39.]  Dr. Kikani's evaluation was the sole basis of Dr. Schrift's review [AR 238], as Dr. Ritz's assessment postdated both of their opinions [AR 306-07].  Dr. Schrift's assessment mirrors Dr. Kikani's: plaintiff was considered "moderately" limited in several areas of work capacity. [AR 232.]  Plaintiff contends that the ALJ's failure to discuss Dr. Schrift's opinion constitutes reversible error. [JS 8.]  As defendant correctly points out, however, Dr. Schrift's

assessment merely echoed Dr. Kikani's evaluation [JS 10] and, thus, the specific and legitimate reasons provided by the ALJ to discount Dr. Kikani's evaluation apply equally to Dr. Schrift's assessment.

**F.   ISSUE THREE: THE LAY OPINION**

Plaintiff's daughter, Lisa Mendoza, completed Third Party Questionnaires on behalf of plaintiff on two occasions. [AR 108-113, 114-19.] Ms. Mendoza wrote that plaintiff performs no household chores [AR 116], cannot participate in his former recreational and social activities [AR 118], is forgetful [Id] and has trouble finishing tasks [Id]. The ALJ did not mention Ms. Mendoza's evidence in his decision. Plaintiff argues that this is reversible error because an ALJ cannot reject testimony of lay witnesses such as Ms. Mendoza unless he provides reasons "germane to each witness whose testimony he rejects." [JS 11, citing Smolen, 80 F.3d at 1288-89.]

Although it may have been advisable for the ALJ to discuss Ms. Mendoza's statements, the failure to do so was not significant. It is notable that Ms. Mendoza's questionnaire responses essentially reiterated the allegations made by plaintiff. The ALJ provided clear and convincing reasons to discount plaintiff's credibility, which has not been challenged on appeal. Because Ms. Mendoza's statements did not comprise a "new line of evidence," the ALJ's failure to mention the questionnaire was inconsequential. See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996)(failure to discuss testimony of claimant's brother was harmless because lay testimony did not comprise "separate line of evidence" from claimant's own discredited testimony)(citing Carlson v. Shalala, 999 F.2d 180, 180 (7th Cir. 1993)). Ms. Mendoza's statements are also at odds with the medical record, which fails to establish that plaintiff has a severe mental or physical impairment.

10

See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)(ALJ's failure to discuss two lay opinions was harmless when opinions conflicted with available medical evidence). In addition, it has been widely-recognized that an ALJ is not required to meet the "impossible burden of mentioning every piece of evidence" presented to him. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991); see Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(ALJ is not required to discuss evidence that is neither significant nor probative); see also Poppa v. Callahan, 1997 WL 913472 at *5 (C.D. Cal. 1997)("A careful reading of the cases discussing lay testimony suggests...that the absence of reference to lay testimony is not per se reversible error."). Under these circumstances, the ALJ's failure to mention Ms. Mendoza's Third Party Questionnaires does not mandate reversal.

## V. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: March 29, 2006

_____/s/_____
CARLA M. WOEHRLE
United States Magistrate Judge